Brown *v.* New York Central Rail Road Company.

New trial denied.

[CAYUGA GENERAL TERM, June 4, 1860.   *Smith, Knox* and *Johnson,* Justices.]

---

FRANCES A. BROWN, by Isaac C. Brown, her guardian, *vs.* THE NEW YORK CENTRAL RAIL ROAD COMPANY.

Where a person, while traveling in a public stage coach, receives an injury, in consequence of the carelessness and negligence of another, and brings an action to recover damages for the injury, the plaintiff is chargeable with the negligence, if any, of the driver of the stage; and, for the purposes of the action, such negligence of the driver is to be regarded as the negligence of the plaintiff.

Where it is not entirely clear, from the evidence, in such an action, that the negligence of the driver contributed to the injury, the case should be submitted to the jury, for their determination.

THIS was an action to recover damages for injuries sustained by the plaintiff in consequence of the carelessness and negligence of the defendant, its servants and agents.   The plaintiff, on the 21st of October, 1858, had employed one Thomas, the owner and driver of a stage coach running from Albion to Batavia, to carry her to Elba, a place between those villages, and had taken her seat in the stage with other passengers.   The usual route was across the track of the defendant's rail road.   The stage started at about ten o'clock in the morn-

ing, which was about the time when a regular passage train usually passed over the rail road. On this occasion the conductor, in order to drop a car at Albion, had divided the train into three parts, with one or more brakemen on each section. Thomas knew of the passage of this train at that hour. On approaching the rail road, he discovered the train, which was moving at the rate of from eight to twelve miles an hour, and stopped his horses. After the main train had passed, that is, the engine and ten or twelve freight cars attached, he started again, and went to within three rods of the track, when he saw a single car approaching, and stopped again. When that car had passed, not seeing any others, he again started ahead, with the view of driving across the track. He immediately discovered two other cars coming. Instead of stopping and jerking his horses back, he raised his whip, hit his horses, and attempted to cross the track ahead of these two cars, and the hind part of his carriage was struck by the cars. The alleged injury occurred in this way.

The judge was requested to nonsuit the plaintiff on the grounds: 1. That the plaintiff had failed to show that the injury complained of was occasioned without fault on her part. 2. That the evidence showed that Thomas, who was employed by the plaintiff, was himself negligent, and that his negligence contributed to produce the injury. 3. That the proof failed to show negligence on the part of the defendant. 4. That upon the undisputed facts of the case, the plaintiff was not legally entitled to recover. The motion for nonsuit was denied, and the judge submitted it to the jury as a question of fact, to determine, 1. Whether Thomas, the driver of the stage, was guilty of negligence in attempting to cross the defendant's road under the circumstances disclosed by the evidence. 2. Whether the defendant was guilty of negligence, in passing the crossing with the cars detached from the engine. 3. Whether Thomas having seen the single car detached from the main train, it was not a matter of prudence for him to look and ascertain if there were not other detached cars, before attempting to cross

the track.   The defendant's counsel, in respect to each of these propositions, claimed that they should be decided by the court as questions of law, and duly excepted to the ruling of the judge submitting them to the jury.

The jury found a verdict in favor of the plaintiff for $500; and the defendant, upon a case, moved for a new trial.

*Benedict & Martindale,* for the plaintiff.

*O. H. Palmer,* for the defendant.

*By the Court,* JOHNSON, J.   It is insisted by the defendant's counsel, that the carelessness of the stage driver contributed to the injury sustained by the plaintiff, and that the case, on this point, is so clear, upon all the evidence, that it ought not to have been submitted to the jury, but should have been determined by the court, as a question of law.

The plaintiff's counsel contends that the plaintiff is in no respect responsible for the carelessness of the driver of the stage, in which she was riding at the time of the injury, it being a public conveyance for all persons, and the plaintiff only an ordinary passenger.   To sustain this position the counsel refers us to the case of *Knapp* v. *Dagg,* (18 *How. Pr. R.* 165.) That was a private carriage, in which the plaintiff was riding with her brother, and the judge at the circuit held that she was not chargeable with the negligence of the driver, with whom she was riding.   It must be admitted that that was a stronger case against the plaintiff than this, where the driver was exercising a public employment as a carrier of passengers. But that was a decision upon a trial at the circuit, and is not entitled to any great weight as an authority.   And with all respect, I am entirely satisfied that the decision is not law. This question, of passengers who have received injuries while traveling in public conveyances, such as omnibuses and vessels, being chargeable with the negligence of the persons in charge of such conveyances, in actions brought by them to re-

cover for such injuries, was very fully and thoroughly discussed, by the ablest counsel, before the common bench, in England, in the cases of *Thorogood* v. *Thorogood* and *Catlin* v. *Hills*, (65 *E. C. L.* 114,) and the judges unanimously held that the passenger bringing the action against the proprietors of the other carriage, or vessel, which directly caused the injury, was chargeable with the negligence of the person in charge of the conveyance in which he was riding, the same as though it were his own.    The principle seems to be, that the passenger having selected his conveyance, and entered into a contract with the owner, to convey him safely, has a remedy against such owner, for any injury occasioned by the negligence of his servant, in managing and conducting such conveyance, and must take the consequences of any default of the servant or driver whom he thought fit to trust, as to all injuries, from other persons, during the passage.    (*See also the case of Briggs* v, *The Grand Junction Railway Co.*, 3 *M. & W.* 244.) The judge at the circuit, however, placed the case in this respect, upon the true ground, and charged the jury that the negligence of the driver, if any, must be regarded, for all the purposes of the action, as the negligence of the plaintiff.

The only question is, whether upon the whole evidence it was so clear that the negligence of the driver contributed to the injury, that the case ought not to have been submitted to the jury.    In view of all the facts and circumstances proved upon the trial, I am of the opinion that it was a proper case to be passed upon by a jury.    It is not every case of negligence on the part of a plaintiff, which will preclude him from recovering for an injury occasioned by the negligence of the defendant.    To have that effect, his negligence must be such that he might, with ordinary care, have avoided the consequences of the defendant's negligence.    It is true that a person crossing a railway track is bound to use his eyes, and ears, to discover and avoid danger ; and if he fails to do this, and receives an injury which he might otherwise have avoided, he will not be allowed to recover.

But here, it is apparent that the driver was on the lookout. He first stopped to let the engine and train pass, and then started and stopped again to let a detached car which had been switched off pass, before approaching the track. He then started again, supposing only one car had been switched off, and got so near the track that the heads of the horses were over the rail, when he saw the other cars coming, which had also been detached from the train, about two rods distant. Under these circumstances I think it was a fair question for the jury, whether the driver exercised ordinary care and prudence, in starting his team the second time, after the single detached car had passed, without waiting to ascertain whether other cars had not also been detached, and were coming behind the single car; and also the question whether the driver used ordinary care and prudence, in attempting to cross the track, after he saw the cars, which immediately caused the injury, approaching. Every one knows that the most careful and experienced driver has not the same immediate control over the motions and speed of his team, however safe and manageable, that a footman has over his own, when approaching a railway track, where trains are likely to pass. The driver whose attention is necessarily more or less directed to his team, has not the same opportunity to observe every thing which may be approaching. And it is quite obvious that in a given position it might be the height of care and prudence, in a driver, to attempt to cross with his team, when it would be inexcusable negligence and rashness in a footman to do so. All these were questions of fact which were submitted to the jury, as appears from the case, with great care and fairness; and as we think it was not a case for a nonsuit, a new trial must be denied.

[Cayuga General Term, June 4, 1860. *Smith, Knox* and *Johnson,* Justices.]